UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE MARIE GOLIBERSUCH O/B/O N.R.G.,

                                                      Plaintiff,               Case # 18-CV-976-FPG

v.                                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                 Defendant.
_____

**INTRODUCTION**

Michelle Marie Golibersuch ("Plaintiff") brings this action on behalf of her son ("N.R.G.") pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied N.R.G.'s Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 9, 15. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

N.R.G. was born in February 2001. Tr. 86.[1] In November 2014, Plaintiff applied for SSI with the Social Security Administration on N.R.G.'s behalf. Tr. 87. She alleged that N.R.G. had been disabled since November 2013 due to, among other things, autism and anxiety. *Id.* On July 18, 2017, Plaintiff and N.R.G. appeared and testified at a hearing before Administrative Law Judge

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

Rosanne M. Dummer ("the ALJ"). Tr. 41. On August 2, 2017, the ALJ issued a decision finding that N.R.G. is not disabled within the meaning of the Act. Tr. 10-27. On July 11, 2018, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted).

**II.    Child Disability Standard**

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds

to step two and determines whether the child has an impairment or combination of impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed N.R.G.'s benefits application under the process described above. At step one, the ALJ found that N.R.G. has not engaged in substantial gainful activity. Tr. 13. At step two, the ALJ found that N.R.G. has pervasive developmental delay with anxiety and a learning disability. *Id.* At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal a Listings impairment. *Id.* Next, the ALJ found that N.R.G.'s impairments, alone or in combination, do not functionally equal a Listings impairment. *Id.* Accordingly, the ALJ determined that N.R.G. is not disabled. Tr. 27.

**II.    Analysis**

Plaintiff disputes the ALJ's determination that N.R.G. has "less than marked" limitations in the domains of (1) Acquiring and Using Information and (2) Attending and Completing Tasks. For the reasons discussed below, the Court concludes that remand is not warranted.

    **a.     Acquiring and Using Information**

In the domain of Acquiring and Using Information, the ALJ considers how well the child acquires or learns information, and how well the child uses the information that he or she has learned. 20 C.F.R. § 416.926a(g). The regulations provide standards by which an ALJ should evaluate this domain. For adolescents (ages 12 to 18) the regulations state:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out

instructions, preparing a job application, or being interviewed by a potential employer).

*Id.* § 416.926a(g)(2)(v). An adolescent may be limited in Acquiring and Using Information if he has difficulty recalling important things learned in school the day before, solving mathematics questions, or explaining what he means. *Id.* § 416.926a(g)(3)(iii)-(v); *see also* SSR 09-3p, 2009 WL 396025, at *6 (Feb. 17, 2009).

The ALJ concluded that N.R.G. has a less than marked limitation in Acquiring and Using Information. Overall, the ALJ read the record as showing that N.R.G.'s functioning in this domain improved over time. Several opinions support this conclusion.

Prior to the onset date of November 2013, N.R.G. exhibited weakness in perceptual reasoning, fine motor coordination, visual-motor integration, and nonverbal problem solving skills. Tr. 391. He also fixated on objects and showed difficulty adapting to change and interacting with peers. Tr. 392. In July 2008, Lisa Jackson, Ph.D., a neuropsychologist, performed an evaluation of N.R.G., concluding that his symptoms were consistent with mild nonverbal learning disability and pervasive developmental disorder NOS.[2] Tr. 391-92. Still, Dr. Jackson was "hesitant to assign a complete diagnosis" of pervasive developmental disorder—as N.R.G. showed some ability to engage and interact with others—and she suggested monitoring his symptoms to see how they progressed. Tr. 392.

In March 2015, N.R.G.'s primary care physician noted that N.R.G. had been diagnosed with pervasive developmental delay, anxiety, and a learning disability. Tr. 490. Nevertheless, he

---

[2] "The diagnostic category of pervasive developmental disorders (PDD) refers to a group of disorders characterized by delays in the development of socialization and communication skills." *Pervasive Developmental Disorders Information Page*, NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKE (last modified Mar. 27, 2019), https://www.ninds.nih.gov/Disorders/All-Disorders/Pervasive-Developmental-Disorders-Information-Page.

5

believed that N.R.G. had "progressed throughout his schooling" and that he had witnessed "continued improvement in [N.R.G.'s] condition as he learns to adapt to different situations." *Id.*

In April 2015, a psychologist who had conducted "comprehensive psychosocial treatment" of N.R.G. in 2010 noted that, as a result of that program, N.R.G. had made significant improvements in his social skills. Tr. 734.

In July 2015, Dr. Jackson reaffirmed her assessment that N.R.G. showed signs consistent with mild-to-moderate nonverbal learning disorder and autism spectrum disorder, though she again noted that she was not certain on the latter diagnosis and believed that his anxiety was "of greater concern." Tr. 461. Dr. Jackson recommended that N.R.G. continue to receive special education support with some "mainstreaming" given that "his academic levels are not significantly low at this time." *Id.*

In October 2016, N.R.G.'s school counselor from 2012 to 2015 wrote a letter describing her impressions of N.R.G. Tr. 252. She noted that, although N.R.G. had difficulties interacting socially and transitioning between tasks, he made "significant gains during his time spent in middle school." *Id.*

Consistent with these sentiments, N.R.G.'s middle- and high-school records do not reveal significant, wide-ranging academic deficits. Granted, N.R.G. received special-education support services at school. Tr. 17-18. This is consistent with Plaintiff's hearing testimony, which indicated that N.R.G. needs extra prompts and help to stay on task and learn. Tr. 69-70. But these academic supports appear to have been successful over the years, as N.R.G. showed passing grades in his subjects. *See* Tr. 253-56. Several teachers who taught N.R.G. during the 2016-2017 school year also submitted opinions for the ALJ's consideration. The only teachers who identified significant deficits in the domain of Acquiring and Using Information were N.R.G.'s math teachers. *See* Tr.

6

338, 356. The hearing testimony indicates that N.R.G. has particular difficulty with math subjects. *See* Tr. 71-72, 77.

In reaching her conclusion, the ALJ gave "great weight" to the February 2015 opinion of state-agency consultant Jennifer Meyer, M.D. Tr. 19. Dr. Meyer found that N.R.G. had a less than marked limitation in Acquiring and Using Information. She noted that N.R.G. had been diagnosed with a learning disability and pervasive developmental delay and had an IEP. Dr. Meyer also cited N.R.G's March 2014 test results, in which he received a full-scale IQ of 89, a perceptional reasoning score of 83, and a verbal comprehension score of 99. Tr. 414. Based on this evidence, Dr. Meyer concluded that N.R.G.'s issues in that domain were only "moderate." Tr. 445.

Plaintiff challenges the ALJ's decision on several grounds. As an initial matter, many of Plaintiff's arguments relate to the ALJ's alleged failure to explicitly discuss various considerations and pieces of evidence relevant to N.R.G.'s application. It is well-established that the ALJ "is not required to discuss all the evidence submitted, and [her] failure to cite specific evidence does not indicate that it was not considered." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005). Similarly, an ALJ's failure to fully express her reasoning does not justify remand so long as the Court can glean the rationale of the decision. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). With that in mind, the Court turns to Plaintiff's arguments.

First, Plaintiff argues that the ALJ failed to consider N.R.G.'s functioning outside of his highly controlled special-education environment. ECF No. 9-1 at 13. It is true that "[a]n ALJ is required to consider the claimant's need for a structured setting and the degree of limitation in functioning the claimant has or would have outside the structured setting." *Shatraw v. Astrue*, No. 11-CV-13, 2012 WL 589667, at *4 (N.D.N.Y. Feb. 22, 2012) (internal quotation marks and

7

brackets omitted); *see also* 20 C.F.R. § 416.924a(b)(5)(iv). But the ALJ did not violate this principle. She analyzed N.R.G.'s abilities both in the context of school as well as in daily life and at other evaluations. *See* Tr. 14-15, 17-20. The ALJ noted that N.R.G. could participate in classroom discussions, ask for help when needed, use a cellphone, help his family with chores, and work at his family's movie theatre. Tr. 15-18. This discussion shows that the ALJ properly considered N.R.G.'s functioning outside of his structured school setting. *See McDaneil v. Comm'r of Soc. Sec.*, No. 17-CV-1326, 2019 WL 3500855, at *6 (W.D.N.Y. Aug. 1, 2019) (ALJ did not violate § 416.924a(b)(5) where he "gave careful consideration to the entire record determining the level of the child's functioning in and outside of the structured environment").

Second, Plaintiff contends that the ALJ erred when she weighed the opinions of NRG's teachers. The teachers used a boilerplate form to express their opinions on N.R.G.'s abilities. *See, e.g.*, Tr. 374. The form required the teachers to rate N.R.G.'s abilities on a 1-to-5 scale, where "1" was "no problem," "2" was "a slight problem," "3" was "an obvious problem," "4" was "a serious problem," and "5" was "a very serious problem." *Id.* While only two of N.R.G.'s teachers opined that N.R.G. had a "serious problem" in any one skill, many stated that N.R.G. had "obvious problems" in some areas. *See, e.g.*, Tr. 347, 365. The ALJ read this evidence to mean that most of N.R.G.'s teachers had no "overt concern[s]" about his academic abilities and did not believe that he had "disabling problems" in the domain. Tr. 20-21. Plaintiff argues that "[t]he fact that educators noted obvious problems across a domain . . . is compelling evidence of a marked limitation." ECF No. 16 at 2.

The Court disagrees. "Obvious" problems in a domain do not necessarily equate to a marked limitation in that domain. *See, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, No. 17-CV-4543, 2018 WL 3801784, at *4 (S.D.N.Y. July 6, 2018) (teacher's opinion that claimant had slight-to-obvious

problems in Acquiring and Using Information was consistent with less than marked limitation); *Fawcett v. Astrue*, No. 11-CV-253, 2012 WL 1744840, at *5 (D.N.H. May 16, 2012) ("[The special education coordinator's] report that claimant had 'an obvious problem' in eight of ten areas relating to the acquisition and use of information is not necessarily inconsistent with the ALJ's finding that claimant's limitation in that domain is not marked."). Accordingly, the ALJ could reasonably interpret those teachers' statements as consistent with a less than marked limitation; even if N.R.G.'s deficits were "obvious," they did not "seriously" interfere with his ability to acquire and use information. 20 C.F.R. § 416.926a(e)(2).

Third, Plaintiff asserts that the ALJ's decision to assign great weight to Dr. Meyer's opinion was erroneous because her opinion was not based on the complete record.[3] ECF No. 9-1 at 15. However, "[t]here is no requirement that opinion sources have access to the complete record." *Alicia C. v. Comm'r of Soc. Sec.*, No. 17-CV-1235, 2019 WL 1470827, at *9 (N.D.N.Y. Apr. 1, 2019); *see also Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order). An ALJ's decision to afford an opinion great weight, even if it is based on a partial record, is permissible where the opinion is consistent with the record as a whole. *See, e.g.*, *Cote v. Berryhill*, No. 17-CV-1843, 2018 WL 4092068, at *23 (D. Conn. Aug. 28, 2018) (collecting cases).

In this case, the ALJ acknowledged that Dr. Meyer evaluated N.R.G. on an incomplete record, but stated that the "[e]vidence received at the hearing level did not indicate any increase in the severity of [N.R.G.'s] impairments." Tr. 19. The ALJ's conclusion is reasonable. Evidence subsequent to Dr. Meyer's evaluation is consistent with her conclusion that N.R.G.'s limitations

---

[3] Plaintiff also seems to argue that a review physician's opinion can never "constitute substantial evidence." ECF No. 9-1 at 15. To the contrary, state agency consultants are qualified as experts and their opinions "can constitute substantial evidence" when consistent with the record as a whole. *Diaz v. Colvin*, No. 13-CV-6641, 2014 WL 2931583, at *6 (W.D.N.Y. June 27, 2014).

were only moderate. Dr. Jackson, N.R.G.'s school counselor, and his primary care physician all observed that N.R.G. made significant improvements over time. With his academic supports, N.R.G. has largely been successful in school—indeed, the only teachers that opined that N.R.G. had a "serious problem" in Acquiring and Using Information were his math teachers. Furthermore, there is evidence that N.R.G. could follow one- and two-step directions, work at his family's movie theatre, interact competently with family and peers, dress himself, engage in hobbies and activities without assistance, and ask for academic help when needed. *See* 20 C.F.R. § 416.926a(g)(2)(v) (identifying skills relevant to the domain of Acquiring and Using Information).

In short, there was sufficient evidence for the ALJ to conclude that Dr. Meyer's opinion, even if based on an incomplete record, was consistent with the record as a whole, and therefore worthy of great weight.

More generally, given Dr. Meyer's opinion and the record evidence described, substantial evidence supports the ALJ's conclusion that N.R.G.'s impairments did not "seriously" interfere with his ability to acquire and use information so as to warrant a marked limitation. *See* 20 C.F.R. §§ 416.926a(e)(2), (g)(2)(v). While, as Plaintiff points out, there may be other evidence to support a different conclusion, that is not enough to justify remand. *See Gonzalez-Cruz v. Comm'r of Social Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018) ("[U]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or *to argue that evidence in the record could support [his] position*." (emphasis added)).

    b.    **Attending and Completing Tasks**

Plaintiff also alleges that the ALJ erred in her analysis of the domain of Attending and Completing Tasks. *See* ECF No. 9-1 at 17-20. Plaintiff cannot show harmful error, however. To

10

establish disability at step three, the child's impairments must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). The ALJ found that N.R.G. did not have a marked limitation in any of the six domains, and Plaintiff only disputes two of the domains. Because the Court has upheld the ALJ's finding in the domain of Acquiring and Using Information, any error with respect to the domain of Attending and Completing Tasks would be harmless: even if Plaintiff succeeded in showing that N.R.G. was markedly limited in that domain, he could not be found disabled.[4] *See, e.g.*, *Gualtieri v. Comm'r of Soc. Sec.*, No. 17-CV-821, 2019 WL 3497917, at *6 (W.D.N.Y. Aug. 1, 2019); *Lindner v. Colvin*, No. 13-CV-1058, 2015 WL 5156877, at *7 (W.D.N.Y. Sept. 2, 2015). Therefore, the Court need not address Plaintiff's arguments on this domain.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 24, 2020
      Rochester, New York

                                                  HON. FRANK P. GERACI, JR.
                                                  Chief Judge
                                                  United States District Court

---

[4] Plaintiff does not argue that N.R.G. is extremely limited in any one domain.